IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

G.B. et al.,

          Plaintiffs,

v.                                  CIVIL ACTION NO.  2:24-cv-00220

WOOD COUNTY BOARD OF EDUCATION, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Wood County Board of Education's (the "Board") motion to dismiss the amended complaint.  (ECF No. 12.)   For the reasons stated below, the Board's motion is **GRANTED IN PART** and **DENIED IN PART**.

I.     BACKGROUND

Plaintiff M.T. is a non-verbal minor with Autism Spectrum Disorder.  (ECF No. 10 at 2, ¶ 6.)  At the time of the incident giving rise to this suit, she was a six-year-old student at Emerson Elementary School, where she received special education services to provide assistance with her education and daily living.  (*Id.* at 2, ¶¶ 6–7, 22.)  Defendant Tena Martin ("Martin") was the special education teacher assigned to M.T.'s classroom.  (*Id.* at 2, ¶ 2.)

M.T. and her parents, G.B. and C.T (collectively, Plaintiffs), allege that on September 21, 2023, M.T. was subjected to a forty-minute restraint in which three school employees, including Martin, participated. (*Id.* at 4, ¶ 15; ECF No. 10-1 at 5–6, ¶ 3.)  In addition to those employees who actively participated, the school nurse and vice principal witnessed the restraint for approximately ten minutes before it ended.  (*Id.*) Later that day, Martin placed a call to G.B to

inform her of the incident and claimed that M.T. had violently attacked her. (*See id.* at 6, ¶ 20; ECF No. 10-1 at 3.)

Thereafter, the school conducted an investigation into the incident and suspended Martin with pay on October 9, 2023. (ECF No. 10-1 at 7.) As part of the investigation, the school's Director of Elementary Education viewed video footage of the incident and determined that "the restraint did not follow the CPI Nonviolent Crisis Intervention Training" that school employees had received. (*Id.* at 6–7.) Consequently, the Director filed a report with Child Protective Services on October 16, 2023, which was ultimately dismissed. (*Id.*) On October 23, 2023, the school superintendent sent a letter to Martin informing her that he would be recommending her termination based on the "unlawful restraint" of M.T. (*Id.* at 7.) Rather than face termination, Martin responded to the letter via email the next day to inform the superintendent that she would be seeking retirement, which the Board approved effective November 2, 2023. (*Id.*)

In December, M.T.'s parents filed a complaint with the West Virginia Department of Education (the "DOE") regarding the restraint. (ECF No. 10-1 at 1.) Over the next two months, the DOE's Office of Special Education conducted an investigation, reviewing footage of the incident and conducting at least one on-site visit to M.T.'s classroom. (*Id.* at 2, 5.) On February 16, 2024, the DOE issued a Letter of Findings, (ECF No. 10-1), which identified multiple violations of policies related to the incident. To start, the DOE found that Martin violated policy by, among other things, improperly using a restraint and failing to comprehensively document the incident. (*Id.* at 9–10.) To the latter point, the letter specifically noted that no documentation indicated the school's principal had been notified of the restraint. (*Id.* at 10.) Additionally, the DOE determined that one of the employees who participated in the restraint had not received the required crisis intervention training prior to the incident. (*Id.* at 9.)

2

On April 29, 2024, Plaintiffs initiated this civil action against the Board and Martin. (*See* ECF No. 1.) Less than a month later, on May 22, 2024, Plaintiffs moved this to amend their Complaint to include allegations that shortly after filing suit, the Board contacted CPS to lodge a "sham" complaint against G.B. and C.T. in retaliation for filing suit. (*Id.* at ¶¶ 41B–41C.)

As relevant here, the amended complaint sets forth claims against the Board for violations of 42 U.S.C. § 1983 (Count I), the Americans with Disabilities Act ("ADA") (Count III), the Rehabilitation Act ("Rehab Act") (Count IV), and state tort claims for negligent hiring and retention (Count V) and loss of filial consortium (Count XI). (ECF No. 10.) The Board subsequently moved to dismiss each of these counts. (ECF No. 12). Plaintiffs and Defendant have now fully briefed the motion to dismiss, (*see* ECF Nos. 13, 18 and 19), which is ripe for adjudication.

## II. LEGAL STANDARD

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Thus, "a complaint is to be construed liberally so as to do

3

substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (quoting *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015)).

To survive a motion to dismiss, a plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Courts, however, "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 268 (1986)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Id.* at 555, 570.

### III.    DISCUSSION

Defendant seeks dismissal of Counts I, III, IV, V, and XI of the Complaint.[1] As discussed more fully below, Defendant only prevails on its argument as to counts V and XI.

A. Count I: 18 U.S.C. § 1983 Claim

Section 1983 allows a plaintiff to bring a claim against any "person" who, acting under color of state law, "depriv[es] [another] of any rights, privileges, or immunities secured by the

---

[1] Defendant initially moved to dismiss Plaintiffs' claim under the West Virginia Human Rights Act ("WVHRA"), which is Count II of the Complaint. However, Defendant withdrew this argument in their reply brief. (*See* ECF No. 19 at 12–13.) Accordingly, Defendant's motion to dismiss Count II is **DENIED** as **MOOT**.

4

Constitution." 42 U.S.C. § 1983.  To state a claim for relief under § 1983, a plaintiff must allege that (1) the conduct complained of was committed by a person acting under color of law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured to him by the Constitution and the laws of the United States.  *See Wirth v. Surles*, 562 F.2d 319, 321 (4th Cir. 1977) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)).

Plaintiffs G.B. and C.T. assert a claim against the Board under § 1983 for violation of G.B. and C.T.'s rights guaranteed by the First Amendment of the U.S. Constitution.  Specifically, Plaintiffs allege that the Board retaliated against G.B. and C.T. by "making a spurious CPS claim against them," thereby violating their First Amendment right "to petition the Government for a redress of grievances and seek access to the courts." (ECF No. 10 at 10, ¶ 43A.)  The Board argues that dismissal is proper because Plaintiffs (1) failed to allege that the Board was acting under color of law and (2) failed to establish that Defendant violated a fundamental right.  (ECF Nos. 13 at 5–6, 19 at 3–4.)

Each element is discussed in turn.

1. <u>Acting under Color of State Law</u>

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  Ultimately, the question in § 1983 cases is whether "the alleged infringement of federal rights [is] fairly attributable to the State." *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 190 (4th Cir. 2022) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

Here, Plaintiffs allege that the Board filed a "sham" CPS complaint against them.  Like all county boards of education in the state, the Board is a corporation, *see* W. Va. Code § 18-5-5, and

therefore legally "a person" subject to liability under §1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (acknowledging that West Virginia county boards of education are subject to § 1983 liability); *Roxul USA, Inc. v. Bd. of Educ. of Cnty. of Jefferson*, No. 3:19-CV-54, 2019 WL 2016866, at *2 (N.D. W. Va. May 7, 2019) ("It is undisputed that the BOE is a "person" for the purpose of § 1983 . . . ."); *Bess v. Kanawha Cnty. Bd. of Educ.*, 2:08-CV-1020, 2009 WL 3062974, at *6 (S.D. W. Va. Sept. 17, 2009) (denying board of education's motion to dismiss a § 1983 claims). Further, all boards of education are political subdivisions of the state, W. Va. Code § 29-12A-3, who are performing governmental functions by virtue of power delegated by the state. Additionally, members of the Board are "public" officials under West Virginia law. W. Va. Code. §18-5-1. While the Complaint does not specify whether the CPS complaint was made by a single member or as a collective action of the Board, the implication is that at least one public official sitting on the Board made the complaint. (*See* ECF No. 10 at 9, ¶¶ 41A–41C.)

Further, although the Complaint admittedly does not use the words "acting under color of law" to describe the Board's actions, Plaintiffs assert that *the Board* contacted CPS to file a "sham" complaint about Plaintiffs G.B. and C.T. with CPS. (ECF No. 10 at 9, ¶¶ 41A– 41C, 43A.). Because this action is attributed to the county agency itself, the clear implication and reasonable inference drawn therefrom is that the Board was acting under its authority as a state subdivision— that is, under color of state law—when it filed the CPS complaint. *See Iqbal*, 556 U.S. at 678 (detailed factual allegations are not required to survive a motion to dismiss); *Kolon Indus., Inc.*, 637 F.3d at 440 (all reasonable inference must be drawn in favor of the plaintiff).

### 2. Deprivation of a Fundamental Right

When actions are fairly attributable to the state, a plaintiff must still demonstrate a deprivation of his or her constitutional rights. Of importance here, "the right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the

government." *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 896–97 (1984).  Further, it "well established" as a necessary corollary to protecting this right that a "public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001).  To that end, to state a claim for First Amendment retaliation under § 1983, plaintiffs must show "(1) that [they] engaged in protected First Amendment activity, (2) that the defendant took some action that adversely affected [their] First Amendment rights, and (3) that there was a causal relationship between [their] protected activity and the defendant's conduct." *Id.* at 8 (citing *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)).

The first two elements are readily satisfied here.  As to the first element, Plaintiffs exercised their First Amendment right to petition the government when they initiated this action in federal court.  *See NLRB*, 467 U.S. at 896–97.  As to the second element, Plaintiffs have alleged that upon filing this suit, Defendants contacted Child Protective Services to lodge a spurious complaint against G.B. and C.T.  Plaintiffs argue that such action is an attempt by the Board to "chill the right of access to the courts" by parents who have reported abuse by school officials.  (ECF No. 18 at 5–6.)  In other words, the thrust of Plaintiffs' allegation is that the Board sought to discourage or penalize plaintiffs by forcing them to deal with the "annoyance, aggravation, inconvenience and emotional distress" resulting from the CPS complaint while simultaneously pursuing this action in federal court.  (*See* ECF No. 10 at 10, ¶¶ 43A–44.)  In this context, Plaintiffs have sufficiently shown, at least for the purposes of a motion to dismiss, that the CPS complaint adversely affected their First Amendment right to access to the courts.

The third element—a causal relationship—is likewise satisfied.  The Fourth Circuit has explained that in order to show causation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated

7

such a right." *McFadden v. Lewis*, 517 Fed. App'x. 149 (4th Cir. 2013) (quoting *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). This requires the defendant to have knowledge of the protected activity and "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).

Here, Plaintiffs allege both knowledge and temporal proximity. First, Plaintiffs allege that they filed suit on April 29, 2024, and sent a courtesy copy to the Board. Then, sometime before May 22, 2024, Plaintiffs were contacted by CPS regarding the "sham" Complaint. Consequently, Plaintiffs allege that the Board contacted CPS less than four weeks after Plaintiffs initiated suit. From this short time period between notice of the Complaint and the CPS call, the Court can reasonably infer a causal relationship between Plaintiffs' constitutionally protected activity and Defendant's retaliatory action. Thus, Plaintiffs have sufficiently alleged a plausible deprivation of a fundamental right.

Accordingly, Plaintiffs have sufficiently stated a claim under §1983 at the motion to dismiss stage.

B. Counts III and IV: ADA and Rehab Act Claims

Plaintiffs have also alleged violations of the ADA and Rehab Act. Specifically, they allege that the BOE discriminated against M.T. by exploiting her inability to verbally communicate allegations of "unlawful acts perpetrated against her." (*See* ECF No. 10 at 12–14, ¶¶ 60–72.)

The Board seeks dismissal of these claims, arguing that because Plaintiffs essentially allege a denial of a fair and appropriate public education ("FAPE"), they were required exhaust all administrative remedies under the Individuals with Disabilities Education Act ("IDEA"). (ECF No. 13 at 7.) Relying on *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017), the Board claims that any lawsuit based on the denial of a FAPE—even if framed as a violation of the ADA or Rehab act—requires plaintiffs to exhaust administrative remedies under the IDEA before filing

suit. (*See id.*) Plaintiffs disagree, arguing their claims are not for a denial of FAPE at all, and, thus, the Board's reliance on *Fry* is misplaced. (ECF No. 18 at 13.)

The IDEA and its implementing regulations guarantee students with disabilities a "free appropriate public education" tailored to their specific needs. 20 U.S.C. § 1400(d). To accomplish this goal, the IDEA also grants parents "the right to bring a civil action" for violations of the statute. § 1415(i)(2)(A). "Before suing, however, a parent generally must exhaust state administrative remedies." *Z.W. by & through Warner v. Horry Cnty. Sch. Dist.*, 68 F.4th 915, 917 (4th Cir. 2023) (hereinafter "*Z.W.*").

The ADA and the Rehab act offer parallel protections to students with disabilities. The ADA forbids schools from discriminating against any "qualified individual with a disability", *id.* at 918 (quoting 42 U.S.C. § 12132), while the Rehab act "imposes similar restrictions on . . . schools," *id.* (citing 29 U.S.C. § 794(a)). As such, the same analysis should be applied to both. *See Doe v. University of Md. Medical Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) ("Because the language of the two statutes is substantially the same, we apply the same analysis to both."). To prove a violation of either statute, "a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the . . . benefit in question; and (3) that he was excluded from the . . . benefit due to discrimination solely on the basis of the disability." *Id.* at 1264–65. Of particular importance here, "[u]nlike the IDEA, neither the ADA nor the Rehabilitation Act requires plaintiffs to exhaust administrative remedies before suing non-federal entities." *Id.*

In *Fry*, the Supreme Court provided a detailed analysis of the interplay between these three statutes. Specifically, the court noted that § 1415(l) of the IDEA "reaffirms the viability of federal statutes like the ADA or Rehabilitation Act as separate vehicles . . . for ensuring the rights of

9

handicapped children." *Fry*, 580 U.S. at 162 (internal quotations omitted). Thus, plaintiffs have some degree of control over which statutory vehicles to employ and how to use them. The *Fry* Court explained that "the IDEA does not prevent a plaintiff from asserting claims under" the ADA and Rehab Act *even if . . . those claims allege the denial of an appropriate public education (much as an IDEA claim would*)." *Fry*, 580 U.S. at 161 (emphasis added). Importantly, though, "[b]efore a plaintiff may file 'a civil action' under the ADA or the Rehabilitation Act 'seeking relief that is also available under' the IDEA, the plaintiff must 'exhaust[ ]' the IDEA's administrative procedures "to the same extent as would be required had the action been brought under' the IDEA." *Z.W.*, 68 F.4th at 918 (quoting 20 U.S.C. § 1415(l)).

To determine whether the exhaustion requirement applies, court must "look to the substance, or gravamen, of a plaintiff's complaint" to determine whether it "concerns the denial of a FAPE, or instead addresses disability-based discrimination." *Fry*, 580 U.S. at 165. Whether a plaintiff "'could have sought' relief available under the IDEA" or "whether any remedies 'are' available under that law" is irrelevant. *Id.* at 169. Rather, courts must look to the substance of the complaint to "whether a lawsuit *in fact* 'seeks' relief available under the IDEA." *Id.* (emphasis added) (quoting 20 U.S.C. §1415(l). Ultimately, if a plaintiff seeks relief that is not available under the IDEA—e.g. compensatory damages under the ADA or Rehab Act—then no such exhaustion is required. *See id.* at 155.

The Supreme Court offered two inquiries that serve as a "clue to the gravamen of a complaint." *Id.* at 171. "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?" *Id.* "[S]econd, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* An affirmative answer to both questions makes it "unlikely"

10

that a complaint "that does not expressly allege the denial of a FAPE is . . . truly about that subject." *Id.*

Such is the case here. The Complaint does not allege that M.T. was denied a FAPE, nor does it seek to alter the education services M.T. would receive if she still attended a Wood County school. Rather, the Complaint asserts that she was discriminated against because of her disability and seeks compensatory damages. If M.T. visited a public library and library staff similarly restrained her for disrupting the reading environment for other visitors, she could bring the same claims under the ADA and Rehab Act. Likewise, suppose that M.T. was an 18-year-old visiting a sibling at the school. If this adult M.T. had become similarly disruptive and was then restrained by school staff for 40 minutes, she could likewise bring suit under the ADA and Rehab Act. Thus, it is unlikely that the gravamen of the complaint is about the denial of an FAPE.

Because Plaintiffs' claims are not grounded in the denial of a FAPE, they were under no obligation to exhaust the administrative remedies available under the IDEA. Accordingly, the Court **DENIES** the Board's motion to dismiss Counts III and IV.

C. *Count V: Negligent Hiring and Retention*

Plaintiffs also bring a claim against the Board for negligent hiring and retention. Specifically, Plaintiffs allege that the Board had a duty to, *inter alia*, investigate the background of is employees, including Martin, and that it breached that duty "by negligently hiring and/or retaining Defendant Martin." (ECF No. 10 at 15, ¶¶ 75–77.) Defendant argues that the Complaint contains no factual allegations that to show that the Board breached any duty relating to the hiring or retention of Martin. (ECF No. 13 at 10–11.)

The longstanding test for negligent hiring and retention largely overlaps the legal analysis of both claims:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick v. W. Va. Dep't of Pub. Safety*, 503 S.E. 2d 502, 506 (W. Va. 1998) (quoting *Taylor*, 499 S.E.2d at 289 n.7).[2] At their core then, both claims center "on an employer's liability for hiring . . . or retaining an employee 'whom the employer knew, or should have known, posed a risk to third parties.'" *Tolliver v. City of Dunbar*, No. 2:21-cv-00011, 2021 WL 5056081, at *3 (S.D. W. Va. Nov. 2, 2021) (quoting *Radford v. Hammons*, Civ. Action No. 2:14-24854, 2015 WL 738062 at *6–*7 (S.D. W. Va. Feb. 20, 2015)). "The analysis focuses on whether (1) the employer (a) was on notice of the employee's propensity [to cause harm or injury], (b) yet unreasonably failed to take action, and (2) a third-party was harmed from the employee's tortious conduct." *Id.*

The Complaint lacks sufficient facts to support these claims. As to negligent hiring, Plaintiffs do not allege that the Board failed to conduct a reasonable preemployment investigation of Martin. Likewise, Plaintiffs do not suggest that such an investigation would have uncovered prior conduct of Martin indicating a propensity to cause harm or injury to anyone. Simply put, Plaintiffs have not pled any facts suggesting that the Board knew or should have known that Martin posed a risk to students, including M.T.

Plaintiffs' allegations relating to negligent retention fare no better. "[T]he relevant inquiry in a negligent retention analysis is, 'Should the employer have reasonably foreseen the risk caused by . . . retaining an unfit person?'" *C.C.*, 859 S.E.2d at 776. Outside of the September 21, 2023

---

[2] Indeed, the Supreme Court of Appeals of West Virginia has said that they are separate claims with their "own discrete elements." *C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 772 (W. Va. 2021). The Supreme Court of Appeals of West Virginia did not, however, elucidate what those discrete elements are or propose a new methodology for analyzing these claims discretely.

12

incident at issue here, Plaintiffs do not allege any prior instances of misconduct by Martin. Thus, they offer no facts suggesting that the Board should have known that Martin posed a risk of harm to students during her employment.

Accordingly, Defendant's motion to dismiss Count V is **GRANTED**.

D. *Count XI: Loss of Filial Consortium*

In the last claim at issue, Plaintiffs seek compensation for loss of filial consortium. Defendant asks the Court to dismiss Plaintiffs' claim for loss of filial consortium arguing that no such claim has been recognized under West Virginia law. (ECF No. 13 at 11.) Plaintiffs argue that this is still an open question of law in West Virginia regarding whether such a claim exists. (ECF No. 18 at 18.) As such, Plaintiffs ask the Court to allow this claim to proceed to summary judgment in case the West Virginia Legislature or Supreme Court of Appeal resolves the before then. The Court is unpersuaded by Plaintiffs' argument. (*Id.* at 19.)

Historically, three types of consortium claims have been considered cognizable. The first is loss of spousal consortium, which at common law was limited to "(1) services, (2) society and (3) sexual relations, and the husband was entitled to recover damages from a tortfeasor when *one or more* of these elements of the relationship with his wife were lost or impaired due to an injury to her." *Belcher v. Goins*, 400 S.E.2d 830, 833 (W. Va. 1990). Later (and certainly way late), this common law right was explicitly expanded to wives who seek to recover for loss of their husband's consortium. *See, e.g. Roof Serv. of Bridgeport, Inc. v. Trent*, 854 S.E.2d 302 (W. Va. 2020).

The second type of claim is loss of parental consortium, which "refers to the intangible benefits to a minor child arising from his or her relationship with such child's natural or adoptive parent." Syl. Pt. 2, *Belcher,* 400 S.E.2d at 832. This "includes society, companionship, comfort, guidance, kindly offices and advice of such parent and the protection, care and assistance provided by the parent." *Id.* In such cases, the uninjured parent may recover damages equal to the loss of

13

the injured parent's financial support to the child, while the child may only recover "for loss or impairment of those nonpecuniary elements constituting parental consortium." *Id.* at Syl. Pt. 6.

The third is loss of child or filial consortium. Generally, loss of child or filial consortium claims have been limited to economic damages because "parents were not understood to depend on the love and companionship of their children in the same manner in which children would depend upon parents." *Losh v. Teton Transp., Inc.*, No. CIV.A. 3:09-1495, 2010 WL 5343216, at *2 (S.D. W. Va. Dec. 21, 2010). Rather, parents were seen as having only a limited "economic interest in their children—in the form of the fruits of their labor." *Id.* That is, parents could only "recover the value of the services which the child is disabled from performing during its minority." Restatement (First) of Torts § 703 (1938). Such is the current state of the law in West Virginia.

As Plaintiffs correctly note, *Losh* recognized that some jurisdictions have taken "a more progressive view, recognizing filial consortium claims for loss of society and companionship." *Losh*, No. CIV.A. 3:09-1495, 2010 WL 5343216, at *2. West Virginia, however, has not taken such a stance. Indeed, in the 14 years since the *Losh* first announced this "matter of first impression in West Virginia," neither the West Virginia Legislature nor the Supreme Court of Appeals has recognized the right of parents to recover non-economic damages for loss of filial consortium. This Court declines to be the first to do so.

Here, the Complaint only states a claim for non-economic damages. Because no such claim is recognized under West Virginia law, Plaintiffs have failed to state a claim for which relief may granted. Accordingly, Defendant the Board's motion to dismiss Count XI is **GRANTED**.

IV. CONCLUSION

For the foregoing reasons, the Board's motion to dismiss, (ECF No. 12), is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims under Counts V and XI are hereby **DISMISSED**, and the motion is **DENIED** as to Counts I, II, and IV.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 24, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

15