IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

G.B., et al.,

    Plaintiffs,

v.                                                        CIVIL ACTION NO. 2:24-cv-00220

WOOD COUNTY BOARD OF
EDUCATION, et al.,

    Defendants.

**ORDER**

    This matter is before the Court on the *Motion to Compel Defendant Wood County Board of Education to Produce the Video of the Victim's Classroom for the Short Time Period Before Co-Defendant Tena Martin was Suspended*. (ECF No. 46). The motion was filed by Plaintiffs G.B. and C.T., who bring this action individually and as parents, guardians, and next friends of their minor child, M.T. (collectively, "Plaintiffs"). In their motion, Plaintiffs seek an order compelling Defendant Wood County Board of Education ("Defendant" or the "Board") to produce video footage depicting M.T.'s classroom for each school day for the time period extending from August 23, 2023, through September 21, 2023. Defendant filed a response in opposition to the motion (ECF No. 50), and Plaintiffs filed a reply brief as well as an unauthorized surreply (ECF No. 56, 60). As such, the motion is now ripe for adjudication. For the reasons set forth herein, Plaintiffs' motion is **GRANTED**.

I.  **BACKGROUND**

G.B. and C.T. bring this action individually and as parents, guardians, and next friends of Plaintiff M.T., a non-verbal minor with Autism Spectrum Disorder. (ECF No. 10 at 2, ¶ 6). At the time of the incident giving rise to this suit, she was a six-year-old student at Emerson Elementary School in Wood County, West Virginia, where she received special-education services to provide assistance with her education and daily living. (Id. at 2, ¶¶ 6–7, 22). Defendant Tena Martin ("Martin") was the special-education teacher assigned to M.T.'s classroom. (*Id*. at 2, ¶ 2). Plaintiffs allege that on September 21, 2023, M.T. was subjected to a forty-minute restraint in which three school employees, including Defendant Ms. Martin, participated. (*Id*. at 4, ¶ 15; ECF No. 10-1 at 5–6, ¶ 3).

On April 29, 2024, Plaintiffs initiated this civil action against the Board and Ms. Martin. (See ECF No. 1). The operative amended complaint sets forth claims against the Board for violations of 42 U.S.C. § 1983 (Count I), the West Virginia Human Rights Act ("WVHRA") (Count II), the Americans with Disabilities Act ("ADA") (Count III), the Rehabilitation Act ("Rehab Act") (Count IV), and state tort claims for negligent hiring and retention (Count V) and loss of filial consortium (Count XI). (ECF No. 10). On March 24, 2025, the presiding District Judge dismissed counts V and XI. (ECF No. 36). Pursuant to the operative case schedule, discovery is set to close in this matter on July 30, 2025, and dispositive motions are due on August 20, 2025. (ECF No. 35).

Plaintiffs filed the subject motion to compel on April 18, 2025. (ECF No. 46). Therein, they seek an order compelling the Board to produce classroom-video footage for the approximately 30-day period from August 23, 2023, through September 21, 2023,

"for Ms. Martin's classroom at Emerson Elementary School." *Id.* at 2.[1] Plaintiffs explain that they requested the video footage from the Board in discovery, and—while the Board agreed to produce the footage—it stated in its response to Plaintiffs' discovery requests that it was "currently in the process of deidentifying minor students not associated with this present lawsuit, in compliance with the Family Education Rights and Privacy Act (FERPA) and will supplement this response when that process is completed." *See id.*

It appears that, despite making this representation on September 9, 2024, the Board has yet to produce the requested footage; while the parties have communicated via videoconference on numerous occasions, they cannot reach an agreement regarding the format of the Board's production of the video footage. According to Plaintiffs, the Board wishes to blur out all portions of the video footage except for a "box" around the Plaintiff's minor child, M.T., which would be the only portion of the frame that would be discernable to the viewer. *Id.* at 6. The Board further does not agree to produce any video footage from the classroom for the days during this thirty-day time period when M.T. was not present in the classroom. *Id.* Plaintiffs' counsel explains that Plaintiffs cannot agree to such a limited response. *Id.* at 6-7. Plaintiffs' counsel illustrates that the "box" approach to redaction of the video footage would be useless to demonstrate, for instance, a "scenario where a teacher or aide in the classroom was acting inappropriately with another student while M.T. was just a few feet away." *Id.* at 6. In other words, Plaintiff's counsel is "interested in what the adults in the classroom [were] doing so we wouldn't see any of that with the box around one kid" as proposed by the Board. (*See* ECF No. 50-5 at 1). Plaintiffs further assert that they "are willing to agree to the easiest and most efficient way

---

[1] Plaintiff explains that this thirty-day time period reflects roughly twenty-one "instructional days" where school was in session. *See id.*

for this video to be produced so that it can be reviewed expeditiously, including by agreed protective order." (ECF No. 46 at 7). Ultimately, they seek an order requiring the Board to produce the requested video of the classroom during the time period in question "in a usable format within 14 days of the date of the Court's Order." *Id.*

In its response, (*see* ECF No. 50), the Board reiterates its objection to providing video footage for those days in which M.T. was not present, on the grounds that such footage "is not relevant nor proportional to the needs of the case." (ECF No. 50 at 1). The Board argues that, because Plaintiffs "seek[] damages for the way Plaintiff M.T. was treated in the classroom," "video footage from days or times in which Plaintiff M.T. *was not present* (wo which there are several for the time period requested) in the classroom" is simply not relevant to Plaintiffs' claims. *Id.* Further, the Board reiterates its objection to producing the video footage in any format besides that discussed in Plaintiffs' brief—where the video is totally blurred except for a boxed-in area around M.T, which the Board terms a "viewing box." (*See* ECF No. 51-1). The Board argues that the purpose of this limitation "is to protect the identities of other, non-claimant students in the classroom pursuant to FERPA." (ECF No. 50 at 3). The Board explains that the classroom footage "depicts a special needs classroom of only 10 other students," and therefore "mere blurring of the faces is not enough to deidentify the students pictured in the video footage such that reasonable persons in the school community would not be able to identify the non-claimant students." *Id.* at 6. The Board insists that its "proposed solution of placing a viewing box around Plaintiff M.T. allows the Board to safeguard the identities of the other non-claimant students in this intimate classroom setting." *Id.* The Board concludes that "Plaintiffs' request to see video footage from times when Plaintiff M.T. was not even present in the classroom, or, of interactions with non-claimant students who are on the

4

other side of the room to which Plaintiff M.T. has no involvement" is neither "relevant, nor proportional to the needs of the case, and a clear attempt at conducting a fishing expedition." *Id.* at 7.

Plaintiffs address the Board's arguments in their reply brief. (ECF No. 56). Plaintiffs explain that the thirty-day time period represents "all school days between the start of school (August 23, 2023) and when the teacher, Ms. Martin, was suspended on September 21, 2023, regardless of M.T.'s attendance." *Id.* at 2. Plaintiffs further explain that, prior to submitting its response brief to the Court, the Board "has never said what days M.T. was absent for the one-month period of requested video[.]" *Id.* Plaintiffs concede that the Board "can provide to Plaintiffs the dates of the videos withheld, if M.T. did not attend the school for that particular day." *Id.* Further, Plaintiffs emphasize that the Board's response completely sidestepped the legal authority cited by Plaintiffs in support of Plaintiffs' argument "that courts have uniformly ordered the production of video in abuse cases in the face of FERPA assertions made by the school districts as a means to withhold discoverable evidence." *Id.* at 3-4. Plaintiffs conclude that, simply put, the Board "improperly attempts to use FERPA as a shield to prohibit Plaintiffs from viewing the video demonstrating its misconduct." *Id.* at 4.

## II.   DISCUSSION

As acknowledged by both parties in their briefing, this Court took up this same issue under similar circumstances in *Mills v. Cabell Cty. Bd. of Education*, 3:22-cv-00592, 2023 WL 4378179 (S.D. W. Va. July 6, 2023). In *Mills*, the plaintiff-parents brought suit against the Cabell County Board of Education on behalf of their minor son, a student who was non-verbal and required assistance with daily activities. *Id.* at *1. During the discovery phase, the parents sought the board's production of classroom-video

footage for a two-month period that the parents believed would "show further mistreatment and neglect of [the student] *and his classmates.*" *Id.* at *2 (emphasis added). The board in *Mills* objected similarly that the request sought irrelevant information; was overly broad and unduly burdensome; would require "blurring" of other minors' faces under FERPA, which would be labor and cost intensive; and constituted an improper fishing expedition based on mere speculation. *Id.* at *9. The *Mills* parents noted in their reply brief that the board failed to dispute that the Court's protective order was insufficient to protect the privacy of other children who may appear in the videos in compliance with the directives of FERPA. *Id.*

The Court in *Mills* swiftly rejected the board's objections, and agreed that the board "has not offered any reasons that the Protective Order . . . is inadequate to address privacy concerns." *Id.* at 10. Accordingly, the Court in *Mills* granted the parents' motion to compel and ordered the board to produce the video footage. Because the parents did not object to the board's decision to blur other students' faces, the Court offered the board an option, stating that it "can blur the faces of other students and/or produce the videos subject to the Protective Order . . . or obtain the permission of the students' parents to allow their images to appear, to the extent it deems necessary." *Id.* The Court noted, however, the following:

> The CCBOE has not met its burden of resisting discovery. It fails to show that the information sought is not relevant, that it is disproportionate to the needs of the case, or that it would be overly burdensome for the CCBOE to comply with the request. The CCBOE argues that it must blur the faces of the other students who may appear incidentally in the videos; however, that does not seem to be required by any law. Indeed, the information provided by the CCBOE, (ECF Nos. 55-4. 55-5), indicates that under FERPA, school videotapes showing students who are not the focus of the films, but just happen to be present in the background, are not "education records" for those students, because they are not directly related to the students. Since FERPA only protects the privacy of students' education records, it would

6

> not require any special measures to be taken for the students present in the background of the films . . . . Moreover, there is a protective order in place, and at this point, the videotapes are only being produced in discovery. As yet, they will not be made part of the public record. Certainly, privacy concerns can be addressed at the point that any portion of the videotapes is introduced into the Court's record.

*Id.* at *10-11.

For precisely the same reasons elucidated by the Court in *Mills*, the Plaintiffs' *Motion to Compel* in this case must be granted. First, it is well-established that the burden is upon the party resisting discovery, not on the party propounding discovery, to demonstrate *specifically* why the discovery should not be had. *See Slampak v. Nationwide Ins. Co. of Am.*, 5:18-CV-154, 2019 WL 4418806, at *7 (N.D. W. Va. Sept. 16, 2019) (explaining that a party objecting on the basis that a request is overly broad, burdensome, or seeks irrelevant information must "show specifically why responding to the request would create a burden or how the request is overly broad in relation to the claims and defenses presented in the litigation"). The Board has completely failed to shoulder this burden.

First, the Board has failed to demonstrate that the video footage is not relevant. As this Court explained in *Mills*, the scope of discovery is broad. *Mills*, 2023 WL 4378179, at *2. The teacher's classroom demeanor and conduct, as well as that of the other adults present, is without question directly relevant to Plaintiffs' core claims at issue in this lawsuit.

Nor has the Board demonstrated that Plaintiffs' request is not proportional to the needs of the case. The footage is solely in the hands of the Board, and potentially contains direct evidence of the conduct alleged by Plaintiffs that is necessary to prove their claims in this civil action. Moreover, a mere thirty-day period—involving less than twenty-one

instructional days—makes Plaintiffs' request in this case less burdensome than the two-month time period requested by the *Mills* plaintiffs and approved by the Court in *Mills*.

Most significant, the undersigned notes that there is a Protective Order in place setting forth the terms for the handling of confidential documents. (ECF No. 23). The Board has wholly failed to demonstrate why the operative Protective Order is inadequate to protect the non-party students' privacy interests in compliance with the directives of FERPA. To the contrary, the undersigned **FINDS** that the Protective Order is adequate to protect the privacy interests of the students under FERPA for the purposes of discovery in this civil action. Plaintiffs rightly emphasize that the Board completely failed to set forth *any* legal authority to support its stance that the only appropriate form of production is to obscure the entire video except for a small "viewing box" around the student in question. The Board clearly acknowledges that Plaintiffs are entitled to discover the video footage. The Board's foot-dragging and unilateral limitation on production—without seeking a protective order from the Court—is simply improper.

Accordingly, the Board is **ORDERED** to produce to Plaintiffs' counsel, by no later than 14 days from the entry of this *Order*, a copy of the classroom-video footage for the time period between August 23, 2023, through September 21, 2023, but only during those dates during which M.T. was present at school. The Board is further **ORDERED** to disclose to Plaintiffs' counsel specific identification of each instance in which video footage was withheld on the grounds that M.T. was not in attendance at the school for that particular day. Further, the Board's request to blur the faces of non-party students or to otherwise obscure the video footage in its production is **DENIED**. The Court notes, however, that the video footage shall be produced pursuant to the terms of the Protective Order, and all parties must comply with the terms of the Protective Order and take

appropriate protective steps should they wish to use the footage in support of a motion or in a proceeding before this Court.

### III. CONCLUSION

In light of the foregoing, **IT IS ORDERED** that Plaintiffs' *Motion to Compel Defendant Wood County Board of Education to Produce the Video of the Victim's Classroom for the Short Time Period Before Co-Defendant Tena Martin was Suspended* (ECF No. 46) is hereby **GRANTED**, as set forth hereinabove.

**IT IS SO ORDERED**.

The Clerk of Court is **DIRECTED** to transmit a copy of this Order to counsel of record and to any unrepresented party.

ENTERED:　June 2, 2025

_____
Dwane L. Tinsley
United States Magistrate Judge