IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

G.B. et al.,

        Plaintiffs,

v.                                CIVIL ACTION NO.  2:24-cv-00220

WOOD COUNTY BOARD OF EDUCATION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion to Reconsider. (ECF No. 72.) For the reasons discussed herein, the motion is **DENIED**.

## I.    *BACKGROUND*

Plaintiff M.T. is a non-verbal minor with Autism Spectrum Disorder. (ECF No. 10 at 2, ¶ 6.) At the time of the incident giving rise to this suit, she was a six-year-old student at Emerson Elementary School, where she received special education services to provide assistance with her education and daily living. (*Id.* at 2, ¶¶ 6–7, 22.) Defendant Tena Martin ("Martin") was the special education teacher assigned to M.T.'s classroom. (*Id.* at 2, ¶ 2.)

M.T. and her parents, G.B. and C.T (collectively, Plaintiffs), allege that on September 21, 2023, M.T. was subjected to a forty-minute restraint in which three school employees, including Defendant Martin, participated. (*Id.* at 4, ¶ 15; ECF No. 10-1 at 5–6, ¶ 3.) In addition to those employees who actively participated, the school nurse and vice principal witnessed the restraint

for approximately ten minutes before it ended.  (*Id.*)  Later that day, Defendant Martin placed a call to Plaintiff G.B to inform her of the incident and claimed that Plaintiff M.T. had violently attacked her.  (*See id.* at 6, ¶ 20; ECF No. 10-1 at 3.)

Thereafter, the school conducted an investigation into the incident and suspended Defendant Martin with pay on October 9, 2023.  (ECF No. 10-1 at 7.)  As part of the investigation, the school's Director of Elementary Education viewed video footage of the incident and determined that "the restraint did not follow the CPI Nonviolent Crisis Intervention Training" that school employees had received.  (*Id.* at 6–7.)  Consequently, the Director filed a report with Child Protective Services on October 16, 2023, which was ultimately dismissed.  (*Id.*)  On October 23, 2023, the school superintendent sent a letter to Defendant Martin informing her that he would be recommending her termination based on the "unlawful restraint" of Plaintiff M.T. (*Id.* at 7.)  Rather than face termination, Martin responded to the letter via email the next day to inform the superintendent that she would be seeking retirement, which the Board approved effective November 2, 2023.  (*Id.*)

In December, Plaintiffs G.B. and C.T filed a complaint with the West Virginia Department of Education (the "DOE") regarding the restraint.  (ECF No. 10-1 at 1.)  Over the next two months, the DOE's Office of Special Education conducted an investigation, reviewing footage of the incident and conducting at least one on-site visit to Plaintiff M.T.'s classroom.  (*Id.* at 2, 5.) On February 16, 2024, the DOE issued a Letter of Findings, (ECF No. 10-1), which identified multiple violations of policies related to the incident.  To start, the DOE found that Defendant Martin violated policy by, among other things, improperly using a restraint and failing to comprehensively document the incident.  (*Id.* at 9–10.)  To the latter point, the letter specifically

noted that no documentation indicated the school's principal had been notified of the restraint. (*Id.* at 10.) Additionally, the DOE determined that one of the employees who participated in the restraint had not received the required crisis intervention training prior to the incident. (*Id.* at 9.)

On April 29, 2024, Plaintiffs initiated this civil action against Defendant Martin and Defendant Wood County Board of Education (the "Board"). (*See* ECF No. 1.) Less than a month later, on May 22, 2024, Plaintiffs moved this to amend their Complaint to include allegations that shortly after filing suit, the Board contacted CPS to lodge a "sham" complaint against Plaintiffs G.B. and C.T. in retaliation for filing suit. (*Id.* at ¶¶ 41B–41C.)

As relevant here, the amended complaint sets forth claims against the Board for violations of 42 U.S.C. § 1983 (Count I), the Americans with Disabilities Act ("ADA") (Count III), the Rehabilitation Act ("Rehab Act") (Count IV), and state tort claims for negligent hiring and retention (Count V) and loss of filial consortium (Count XI). (ECF No. 10.) The Board subsequently moved to dismiss each of these counts. (ECF No. 12). The Court denied the motion as to Counts I, II, and IV, but granted it as to and dismissed Counts V and XI. (*See* ECF No. 36.)

Plaintiffs have now filed the pending motion, asking the Court to reconsider the dismissal of Count V, based on new evidence revealed in discovery. (ECF No. 72.) The Board filed a response, (ECF No. 74), but Plaintiffs did not file a reply. As such, this motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure governs motions to reconsider interlocutory orders. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469–70 (4th Cir.

3

1991) (finding that, under Rule 54(b), "[a]n interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment"). Though Rule 54(b) grants courts broad discretion to reconsider prior rulings to ensure justice is done, that discretion "is not limitless." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). In the Fourth Circuit, "courts . . . cabin[ ] revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *Id.*; *see also U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) ("[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case."). Thus, prior rulings cannot be disturbed unless there has been "(1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; [or there becomes] (3) [a] need to correct clear or manifest error in law or fact, to prevent manifest injustice."[1] *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003); *see also Employers' Innovative Network, LLC v. Bridgeport Benefits, Inc.*, No. 5:18-CV-01082, 2019 WL 8160984, at *1 (S.D. W. Va. Sept. 17, 2019) (Berger, J.) (quoting *Howard v. W. Va. Div. of Corr.*, No. 2:13-CV-11006, 2016 WL 1173152, at *5 (S.D. W. Va. Mar. 22, 2016) (Johnston, J.)).

Nevertheless, motions to reconsider are heavily disfavored. They are "an extraordinary [request] which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403. Parties may not file a motion to reconsider merely to rehash arguments that have already been raised and rejected. *Carlson*, 856 F.3d at 326; *Regan v. City of Charleston*, 40 F. Supp. 3d 698, 702 (D.S.C. 2014). Nor may parties use a motion to reconsider to make new "arguments which could have been raised" earlier but were not. *Pac. Ins. Co.*, 148 F.3d at 403. Simply put, there is no second bite at the

---

[1] This standard seemingly mirrors that applicable to motions to reconsider final orders under Rule 59(e). There is, however, one difference: the Rule 54(b) standard "departs from [the Rule 59(e)] standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of 'new evidence not available at trial.'" *Carlson*, 856 F.3d at 325 (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

apple. *Wooten v. Commonwealth of Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016). Courts' interlocutory rulings must stand unless one of the three narrow exceptions identified above applies. *Carlson*, 856 F.3d at 325 ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009))); *see also Norfolk S. Ry. v. Nat'l Union Fire Ins. of Pittsburgh*, 999 F. Supp. 2d 906, 918 (S.D. W. Va. 2014) ("[I]t is improper to file a motion for reconsideration simply to ask the Court to rethink what the Court had already thought through—rightly or wrongly.").

### III. DISCUSSION

The Court previously dismissed Plaintiffs' claim against the Board for negligent hiring and retention because the Amended Complaint did not contain "any facts suggesting that the Board knew or should have known that Martin posed a risk to students, including M.T."[2] (ECF No. 36 at 12, 13.) In the pending motion, Plaintiffs claim that they have "uncovered additional facts through the discovery process that clearly demonstrate" a claim for negligent hiring and retention against the Board. (ECF No. 72 at 4.) To start, Plaintiffs point to two letters of reprimand in Defendant Martin's personnel folder. (*Id.* at 4–5.)

---

[2] The Court previously explained, (ECF No. 36 at 12), that the following test applies for claims of negligent hiring or retention:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick v. W. Virginia Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (W. Va. 1998); *see also C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 773 (W. Va. 2021) (reasoning that petitioners failed to state a claim for negligent hiring when they did not allege, *inter alia*, "any irregularities attendant to the Assistant Principal's hiring").

First, on May 30, 2023, the Wood County Superintendent wrote a letter of reprimand to Defendant Martin "for her misconduct while working at Blennerhassett Middle in Wood County." (*Id.* at 4–5.) This letter arose from an incident in which Defendant Martin "tracked down a student," "ripped his headphones off of his head[,] and used an inappropriate tone toward him . . . ." (*Id.* at 5.) Defendant Martin was evidently "too close . . . to the student," "would not let him leave the area," and "continu[ed] to use an inappropriate tone." (*Id.*)

Second, on August 11, 2007, the Parkersburg High School Principal wrote a letter of reprimand to Defendant Martin. (*Id.*) This letter arose from an incident in which Defendant Martin left work without permission for a majority of the day. (*Id.*) The letter also notes that Defendant Martin did not report this absence. (*Id.*)

Further, it was evidently revealed during discovery that the Principal and Assistant Principal of Emerson Elementary School, who were charged with the lateral hiring of Defendant Martin for the 2023-24 school year, neither checked Defendant Martin's personnel file nor conducted a background check on Defendant Martin—despite those steps being "the standard process of a lateral hire." (*Id.* at 6–10.)

The Board offers several arguments in opposition to Plaintiffs' motion for reconsideration. (*See* ECF No. 74.) Each argument is discussed in turn below.

### A. *Procedural Argument*

To start, the Board broadly claims that "courts" within the Fourth Circuit do not "construe a Rule 54(b) motion as a request to amend." (ECF No. 74 at 3 (citing one case).) Further, it states that "Plaintiffs' Motion is not accompanied by a motion for leave to amend nor does it include precisely what allegations they seek to amend to cure the deficiencies in their Amended

Complaint." (*Id.*) As a result, the Board argues that Plaintiffs' Amended Complaint still does not satisfy the federal pleading standard regardless of the new evidence. (*See id.*)

The Court does not necessarily agree that a Rule 54(b) motion *must* be accompanied by a motion to amend under Rule 15. Nothing in the Federal Rules of Civil Procedure requires it, and *one* district court's justification[3] does not equate to a controlling rule of law. While tandem motions may be better practice, the Court can also grant leave to amend, even if a party does not move to do so. *See* Fed. R. Civ. P. 15(a)(1)(2) (providing that "a party may amend its pleading only with . . . the court's leave," which "should [be] freely give[n] . . . when justice so requires"); *see also* Fed. R. Civ. P. 1 ("These rules . . . should be construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Nevertheless, Plaintiffs have also failed to state what additional allegations would cure the deficiencies in their Amended Complaint. Plaintiffs' theory appears to be two-fold. First, the Board did not conduct a reasonable investigation into Defendant Martin's background because it did not check her personnel file or conduct a background check. (*See* ECF No. 72 at 6–10.) Second, the Board should have known Defendant Martin posed a risk to students based on the letters of reprimand in her personnel file. (*See id.* at 9 (describing Defendant Martin's "itinerant past within the Wood County BOE system" as a "potential red flag").)

Although the Court can infer what amendments Plaintiffs would likely make, that is not its role. The Court will not guess what amendments Plaintiffs intend to make and then order them to make such amendments. Plaintiffs must prosecute this matter themselves.

---

[3] To be clear, the court in *Calloway-Durham v. N.C. Dep't of Just.*, No. 5:21-CV-371-BO, 2024 WL 113235, at *1 (E.D.N.C. Jan. 10, 2024) did not cite to any other case for support of its rational.

7

### B. Substantive Missteps

Next, the Board relies on West Virginia Code § 18A-4-7a in arguing that "Plaintiffs' 'new evidence' is neither material nor would produce a new outcome." (ECF No. 74 at 4.) Section 18A-4-7a in pertinent part, that "[i]f one or more applicants under all the postings for a vacancy meets the qualifications listed in the job posting, the successful applicant to fill the vacancy shall be selected by the board within 30 working days of the end of the first posting period." W. Va. Code § 18A-4-7a(q)(3). In interpreting this subsection, the West Virginia Supreme Court reasoned that "the Legislature recognized that there would be situations where there would be only one qualified applicant, and "[i]n such a case, . . . the position be filled by the qualified applicant." *Mingo Cnty. Bd. of Educ. v. Jones*, 512 S.E.2d 597, 600 (W. Va. 1998).

Here, the new evidence—*i.e.*, lack of background check or review of an applicant's personnel folder—indicates a potential "irregularity" in Defendant Martin's hiring. *See C.C.*, 859 S.E.2d at 773. However, the Board argues that, because Defendant Martin was the only qualified applicant, it was statutorily required to hire her. (*See* ECF No. 74 at 5–6.) Consequently, the Board reasons that a background check, interview, or review of Defendant Martin's personnel file would not have made a difference in the hiring decision.[4] (*See id.* at 6.)

However, even if the Board did not "conduct a reasonable investigation" into Defendant Martin's background, such an investigation would not have uncovered that Defendant Martin posed a "possible risk of harm or injury" students. *See McCormick*, 503 S.E.2d at 506. While Plaintiffs' new evidence does indicate that Defendant Martin had a minor record of previous misconduct, it does not indicate that any of these prior acts of misconduct involved the use of an

---

[4] In fact, failing to adhere to § 18A-4-7a(q)(3) may have been just a different "irregularity" in the hiring process.

improper restraint on an autistic kindergarten student. (*See* ECF No. 74 at 6.) To that extent, there is no nexus between Defendant Martin's unauthorized absence and the incident with Plaintiff M.T. Further, while the incident in which Defendant Martin "ripped" the headphones off of a student and was "too close" to said student while using an "inappropriate tone" may justify a *de minimis* amount of concern, it is a far cry from putting a six-year-old autistic student in an improper restraint for forty minutes. As such, it is unclear how a proper investigation would have given the Board notice of any propensity Defendant Martin may have had to use an improper restraint on Plaintiff M.T. *See McCormick,* 503 S.E.2d at 506. Therefore, this new evidence does not warrant disturbing the Court's prior ruling.

Accordingly, Plaintiffs' Motion for Reconsideration, (ECF No. 72), is **DENIED**.

### IV.   CONCLUSION

For these reasons, the Plaintiffs' Motion for Reconsideration, (ECF No. 72), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     March 5, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE