**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

G.B. et al.,

Plaintiffs,

v. CIVIL ACTION NO. 2:24-cv-00220

WOOD COUNTY BOARD OF EDUCATION, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are two motions for summary judgment filed by Defendant Wood County Board of Education ("WCBOE"), (ECF No. 123), and Defendant Tena Martin ("Martin"), (ECF No. 125). For the reasons discussed herein, both motions, (ECF Nos. 123, 125), are **GRANTED IN PART** and **DENIED IN PART**.

## ***I. BACKGROUND***

This matter arises out of the alleged unlawful restraint of Plaintiff M.T. by Defendant Martin. Plaintiff M.T. is a non-verbal minor with Autism Spectrum Disorder. (ECF No. 10 at 2, ¶ 6.) At the time of the incident giving rise to this suit, she was a six-year-old student at Emerson Elementary School, where she received special education services to provide assistance with her education and daily living. (*Id.* at 2, ¶¶ 6–7, 22.) Defendant Martin was the special education teacher assigned to M.T.'s classroom. (*Id.* at 2, ¶ 2.)

Plaintiffs M.T. and her parents, G.B. and C.T (collectively, "Plaintiffs"), allege that on

September 21, 2023, Plaintiff M.T. was subjected to a forty-minute restraint in which three school employees, including Defendant Martin, participated. (*Id.* at 4, ¶ 15; ECF No. 10-1 at 5–6, ¶ 3; *see also* ECF No. 130.) This restraint occurred after Plaintiff M.T. climbed on a desk multiple times. (*See* ECF No. 10-1 at 5.) Defendant Martin then pulled Plaintiff M.T. to the floor, and Plaintiff M.T. struck Defendant Martin's leg one time. (*Id.*; *see also* ECF No. 130.) The restraint ensured thereafter. In addition to those employees who actively participated, the school nurse and vice principal witnessed the restraint for approximately ten minutes before it ended. (ECF No. 10 at 4, ¶ 15.) Later that day, Defendant Martin placed a call to Plaintiff G.B to inform her of the incident and claimed that Plaintiff M.T. had violently attacked her. (*See id.* at 6, ¶ 20.)

Subsequently, the school conducted an investigation into the incident and suspended Defendant Martin with pay on October 9, 2023. (ECF No. 10-1 at 7.) As part of the investigation, the school's Director of Elementary Education viewed video footage of the incident and determined that "the restraint did not follow the CPI Nonviolent Crisis Intervention Training" that school employees had received. (*Id.* at 6–7.) Consequently, the Director filed a report with Child Protective Services ("CPS") on October 16, 2023, which was ultimately dismissed. (*Id.*) On October 23, 2023, the school superintendent sent a letter to Defendant Martin informing her that he would be recommending her termination based on the "unlawful restraint" of Plaintiff M.T. (*Id.* at 7.) Rather than face termination, Defendant Martin responded to the letter via email the next day to inform the superintendent that she would be seeking retirement, which the Board approved effective November 2, 2023. (*Id.*)

In December of 2023, Plaintiffs G.B. and C.T filed a complaint with the West Virginia Department of Education (the "DOE") regarding the restraint. (*Id.* at 1.) Over the next two

months, the DOE's Office of Special Education conducted an investigation, reviewing footage of the incident and conducting at least one on-site visit to Plaintiff M.T.'s classroom. (*Id.* at 2, 5.) On February 16, 2024, the DOE issued a Letter of Findings, (*see generally id.*), which identified multiple violations of policies related to the incident. To start, the DOE found that Defendant Martin violated policy by, among other things, improperly using a restraint and failing to comprehensively document the incident. (*Id.* at 9–10.) To the latter point, the letter specifically noted that no documentation indicated the school's principal had been notified of the restraint. (*Id.* at 10.) Additionally, the DOE determined that one of the employees who participated in the restraint had not received the required crisis intervention training prior to the incident. (*Id.* at 9.)

On April 29, 2024, Plaintiffs initiated this civil action against Defendants Martin and WCBOE (collectively, "Defendants"). (*See* ECF No. 1.) Less than a month later, on May 22, 2024, Plaintiffs amended their Complaint to include allegations that shortly after filing suit, WCBOE contacted CPS to lodge a "sham" complaint against Plaintiffs G.B. and C.T. in retaliation for filing suit. (*See* ECF No. 10.) The amended complaint[1] sets forth the following claims: violations of 42 U.S.C. § 1983 against Defendants (Count I); violation the West Virginia Human Rights Act ("WVHRA") against Defendants (Count II); violation of the Americans with Disabilities Act ("ADA") against Defendants (Count III); violation of the Rehabilitation Act ("Rehab Act") against Defendants (Count IV); negligent training against Defendant WCBOE (Count VI); negligent supervision against Defendant WCBOE (Count VII); general negligence against Defendants (Count VIII); the tort of outrage against Defendants (Count IX); and civil

---

[1] The amended complaint also asserted state tort claims for negligent hiring and retention against Defendant WCBOE (Count V) and loss of filial consortium against Defendants (Count XI), (*see* ECF No. 10), which were subsequently dismissed, (*see* ECF No. 36).

battery against Defendants (Count X).[2] (*Id.*)

Defendants filed the pending Motions for Summary Judgment. (ECF Nos. 123, 125.) Plaintiffs filed responses, (ECF Nos. 118, 119, 128), and Defendants filed replies, (ECF Nos. 131, 132). As such, these motions are fully briefed and ripe for adjudication.

## *II. LEGAL STANDARD*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving

[2] In their response to Defendant Martin's Motion for Summary Judgment, Plaintiffs clarify that they are only pursuing Counts I, II, IX, and X against Defendant Martin. (ECF No. 119 at 2.) Accordingly, Defendant Martin's Motion for Summary Judgment, (ECF No. 125), is **GRANTED** as to Counts III and IV, which are hereby **DISMISSED**. Count VIII is also **DISMISSED** as to Defendant Martin. Further, the Court previously dismissed Count XI entirely because West Virginia law does recognize the right of parents to recover non-economic damages for loss of filial consortium. (*See* ECF No. 36.) To be clear, though, Count XI is also **DISMISSED** as to Defendant Martin.

party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

## ***III. DISCUSSION***

In its motion, Defendant WCBOE seeks summary judgment on Counts I, II, III, IV, and X of the amended complaint. (ECF No. 123.) Plaintiffs concede Count IX and Count X against Defendant WCBOE.[3] (*See* ECF No. 118.) As such, only Counts I, II, III, and IV are at issue in Defendant WCBOE's pending motion. Conversely, Defendant Martin seeks summary judgment on all claims against her, (ECF No. 125), which, at this point, comprise of Counts I, II, IX, and X, (*see* ECF No. 119 at 2). Each of these counts are discussed below.

### ***A. Defendant Martin's Immunity Arguments***

As an initial matter, Defendant Martin argues that she is entitled to qualified immunity on Plaintiffs' § 1983 claim. (*See* ECF No. 126 at 11–13; ECF No. 132 at 9 ("Defendant Martin is entitled to qualified immunity on Plaintiffs' Fourteenth Amendment claim.").) As discussed more fully below, Section 1983 subjects to civil liability any person who, acting under color of

[3] Accordingly, Counts IX and X are **DISMISSED** as to Defendant WCBOE.

state law, deprives an individual of his or her constitutional or federal rights. Government officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Thus, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) ("We repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."). "However, where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Deavers v. Martin*, 629 F. Supp. 3d 389, 404 (S.D. W. Va. 2022) (Johnston, C.J.) (quoting *Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000)).

Qualified immunity exists to protect officers in the performance of discretionary functions unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000). When the doctrine applies, a government official is entitled to immunity "unless '(1) [he] violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was clearly established at the time.'" *Garrett v. Clarke*, 74 F.4th 579, 583–584 (4th Cir. 2023) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)). "Courts have discretion to decide the order in which to engage [the] two prongs" of the qualified-immunity analysis. *Tolan v. Cotton*, 572 U.S. 650, 656, (2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). However, if the answer to either question counsels against the nonmoving party, qualified immunity applies.[4]

[4] Defendant Martin claims that there was (1) no constitutional violation, and, (2) even if there was one, such a right was not clearly established. (*See* ECF Nos. 126 at 12–13; 132 at 9–10.) However, as discussed more fully below,

For a right to be clearly established, "'[t]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan*, 572 U.S. at 656 (alterations in original) (quoting *Hope*, 536 U.S. at 741); *see also West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014) ("The law is clearly established if 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011))). To that extent, the Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). At the same time, a clearly established right does not require a case that is factually "on point." *al-Kidd*, 563 U.S. at 741. Rather, "[e]xisting precedent must have placed the statutory or constitutional question beyond debate." *West*, 771 F.3d at 213 (citation omitted). "Courts 'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit] [C]ourt of [A]ppeals, and the highest court of the state in which the case arose.'" *Id.* (quoting *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012)).

Here, Defendant Martin argues that it was not clearly established that her restraint was unlawful. (ECF No. 126 at 13.) She contends that Plaintiffs' identification of the general "right to bodily integrity" is too broad. (ECF No. 132 at 9 (relying on *al-Kidd*, 563 U.S. at 742).) Instead, Defendant Martin insists that no existing precedent establishes that a teacher restraining "a dysregulated special education student using a hold understood at the school to be approved . . . in the presence of an Assistant Principal and school nurse, after unsuccessful attempts at

---

Plaintiffs have made a sufficient showing that Defendant Martin violated Plaintiff M.T.'s constitutionally-protected Fourteenth Amendment right to bodily integrity to survive the summary judgment stage. Thus, the only question remaining to determine whether Defendant Martin is entitled to qualified immunity is whether that right was clearly established.

redirection, and for the duration of the child's continued dysregulation" is a constitutional violation. (*See id.*)

Conversely, Plaintiffs offer *H.H. ex rel. H.F. v. Moffett*, 335 F. App'x 306 (4th Cir. 2009) as an analogous case. (ECF No. 119 at 16.) In *Moffett*, a student with a disability brought a 42 U.S.C. § 1983 action against a special education teacher and teaching assistant for, *inter alia*, violating her substantive due process right to freedom from undue restraint by keeping her physically restrained in her wheelchair for extended periods of time. 335 Fed. App'x at 308–09. The Court found that the teacher and teaching aide were not entitled to immunity for the conduct, "as a reasonable teacher would plainly recognize that maliciously restraining a child for long periods of time was unlawful." *Id.* at 314. While there were appropriate times when the student needed to be strapped to her wheelchair, such as to keep her from falling out while she was moving, the Fourth Circuit found a civil rights violation because it was clear that she was being restrained "for long periods of time . . . . with malice . . . [and] with callous and deliberate indifference toward" her rights and not for educational or safety purposes. *Id.* at 313.

Tellingly, although there was not "any case that holds that a teacher, who straps a disabled child in her wheelchair in the classroom, violates the child's constitutional right to be free from restraint," the Fourth Circuit had "little difficulty finding that a reasonable teacher would know that maliciously restraining a child in her chair for hours at a time interferes with that child's constitutional liberty interests." *Id.* The *Moffett* Court provided the following explanation:

> In *Jefferson*, the court found that, where plaintiffs alleged that a teacher had tied an eight-year-old student to a chair with a jump rope for an entire school day, the teacher was not entitled to a defense of qualified immunity. 817 F.2d 303. The use of the jump rope restraint was found to violate the child's right to freedom from undue bodily restraint even though it was supposedly being employed "as part of an instructional technique imposed by school policy." *Id.* at 304. *Jefferson* thus

> reinforced the point made in *Hall*: even where a teacher may have a conceivably permissible justification for use of a restraint, her actions will not be protected by qualified immunity when they amount to an "abuse of official power literally shocking to the conscience." *Hall*, 621 F.2d at 613.

*Moffett*, 335 Fed. App'x at 314 (discussing *Jefferson v. Ysleta Indep. Sch. Dist*., 817 F.2d 303 (5th Cir. 1987) and *Hall v. Tawney*, 621 F.2d 607 (4th Cir. 1980)).

Although Defendant Martin attempts to distinguish the present facts from *Moffett*, (ECF No. 132 at 9–10), this Court has little difficulty in finding that a reasonable special education teacher would know that physically restraining child for extended periods of time interferes with the child's constitutional liberty interests, *cf. Moffett,* 335 Fed. App'x at 313; *see al-Kidd*, 563 U.S. at 741 (recognizing a clearly established right does not require a case that is factually "on point"). "Even where a teacher may have a conceivably permissible justification for use of a restraint, her actions will not be protected by qualified immunity when they amount to an 'abuse of official power literally shocking to the conscience.'" *Moffett*, 335 Fed.Appx. at 314 (quoting *Hall*, 621 F.2d at 613). Defendant Martin claims that the justification for such force was to stop Plaintiff M.T. from jumping on classroom furniture. However, as discussed more fully below, Plaintiffs have made a sufficient showing that Plaintiff M.T. was restrained for an extended period of time with malice, as opposed to for educational or safety purposes, such that Defendant Martin's use of force may amount to an abuse of official power literally shocking to the conscience. *See Moffett*, 335 Fed. App'x at 313–14; *see also Deavers*, 629 F. Supp. 3d at 404 (explaining that "where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury . . . must determine liability").

Accordingly, Defendant Martin's Motion for Summary Judgment, (ECF No. 125), is **DENIED** insofar as she argues she is entitled to qualified immunity.

### *B. Count I: 42 U.S.C. § 1983*

Section 1983 allows a plaintiff to bring a claim against any "person" who, acting under color of state law, "depriv[es] [another] of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege that (1) the conduct complained of was committed by a person acting under color of law;[5] and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured to him by the Constitution and the laws of the United States. *See Wirth v. Surles*, 562 F.2d 319, 321 (4th Cir. 1977) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)).

Here, Plaintiffs assert two separate theories. First, Plaintiffs allege that Defendant Martin violated Plaintiff M.T.'s constitutionally-protected Fourteenth Amendment right to bodily integrity. (ECF No. 10 at 10, ¶ 43.) Second, Plaintiffs allege that Defendant WCBOE violated Plaintiffs G.B. and C.T's First Amendment right to petition the Government for a redress of grievances and to seek access to the courts. (*Id.*, ¶ 43A.) Each allegation is discussed in turn below.

#### 1. Defendant Martin

The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This clause recognizes two distinct categories of rights: procedural rights and substantive rights. *See, e.g.*, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). While procedural due process simply guarantees fair procedures (typically notice and opportunity to be heard), *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008), substantive due

[5] Neither Defendant challenges the first element in this case. (*See* ECF Nos. 124 at 6–9; 126 at 4–7.)

process protections guard against "state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991).

As to substantive due process, the right to bodily integrity has been recognized as a liberty interest under the Fourteenth Amendment. *See Meeker v. Edmundson*, 415 F.3d 317, 323-24 (4th Cir. 2005). Of relevance, the Supreme Court has recognized that "corporal punishment in public schools implicates a constitutionally protected liberty interest . . . to be free from . . . unjustified intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *see also id.* at 674 ("[W]here school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, we hold that Fourteenth Amendment liberty interests are implicated."). The proper inquiry into a substantive due process violation focuses on the force imposed by school officials. *Meeker*, 415 F.3d at 321. For example, a school official can violate a student's rights to substantive due process if "the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Hall*, 621 F.2d at 613.

Here, Defendant Martin argues that summary judgment should be awarded in her favor for two reasons. First, relying on the language from *Hall*,[6] Defendant Martin asserts that her "actions

[6] The Court notes that the Fourth Circuit has explained that terms used in *Hall*, such as "'inhumane,' 'malicious,' 'sadistic,' 'shocking to the conscience,' etc., are properly understood [] as descriptives of degrees of force" that violate due process. *Kidd v. O'Neil*, 774 F.2d 1252, 1261 (4th Cir. 1985). Those terms are merely "descriptives of state agent conduct and are therefore *not the substantive tests of deprivation of constitutional right in the different factual*

do not rise to the level required for a finding that she violated M.T.'s constitutional rights" because there is no evidence that Plaintiff M.T. "suffer[ed] any physical injuries from the subject restraint" or that Defendant Martin "acted with any level of malice toward M.T." (ECF No. 126 at 6 (also noting that a nurse evaluated Plaintiff M.T. after the restraint and determined that she did not suffer any injuries).) Second, Defendant Martin claims that her "restraint was not disproportionate to the need presented." (*Id.*) Recalling that Plaintiff M.T. was climbing on desks, Defendant Martin reasons that she "only restrained M.T. after other efforts to redirect M.T. from this dangerous activity were unsuccessful." (*Id.*)

However, Plaintiffs have made a sufficient showing that genuine issues of fact exist. *See Catrett*, 477 U.S. at 322. First, Plaintiffs argue that "the emotional injuries of having a teacher in the special education classroom pin down a 6 year old special needs, non-verbal student for an extended period of time . . . should be readily apparent." (ECF No. 119 at 13–14.) Second, Plaintiffs argue that the restraint served no purpose and was unnecessary because Plaintiff M.T. was not a threat or danger to herself, Defendant Martin, or others, and other less restrictive alternatives were readily available. (*Id.* at 11 (further stating that the restraint was "*too long* and lasted beyond any possible understanding of what could have been misconstrued as a danger or emergency").) Plaintiffs further assert that the restraint violated policies and training, Defendant Martin lied about the restraint, and Defendant Martin was terminated because of the restraint. (*See id.* at 11–13.) Plaintiffs support these arguments with a video of the incident, the West

*contexts to which they refer*; they simply describe conduct that would necessarily exceed any privileged use of force in those different contexts." *Id.*, n.15 (emphasis added). To that extent, the language from *Hall* was based on a passage from a case recognizing a prisoner's due process right to be free from excessive force—not a student's right to be free from unjustified intrusions on personal security related to corporal punishment in school. *See Just. v. Dennis*, 793 F.2d 573, 578 (4th Cir. 1986) (discussing *Johnson v. Glick*, 481 F.2d at 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)). Thus, Defendant Martin's reliance on the "element[s] of the *Hall* standard," (*see, e.g.*, ECF No. 132 at 4), are misplaced.

Virginia State Board of Education's Letter of Findings, Defendant Martin's suspension letter, and excerpts of various deposition testimonies. (*Id.* at 7–15; *cf. Liberty Lobby*, 477 U.S. at 256.)

Defendant Martin discredits Plaintiffs' evidence and excuses her behavior as mere "poor judgment." (ECF No. 132 at 4.) Perhaps. Nevertheless, Plaintiffs have made a sufficient showing that genuine issues of material fact exist that would permit a reasonable jury to find in their favor. *See Raleigh–Durham Airport Auth.*, 597 F.3d at 576,

Accordingly, Defendant Martin's Motion for Summary Judgment, (ECF No. 125), is **DENIED** as to Count I.

**2. Defendant WCBOE**

In the pending motion, Defendant WCBOE asserts that it is immune from liability pursuant to W. Va. Code § 49-2-810. (*See* ECF No. 24 at 6–9.) Plaintiffs disagree. (*See* ECF No. 118.)

W. Va. Code § 49-2-810 prescribes that "[a]ny person, official or institution participating in good faith in any act permitted or required by this article are immune from any civil or criminal liability that otherwise might result by reason of those actions." This immunity provision appears in Article 2 of Chapter 49 of the West Virginia Code, which governs state responsibilities for children. *See* W. Va. Code § 49-2-101 *et seq*. As evident by the clear text of the statute, "[t]he law protects only those reports made "in good faith[.]" *Mark V.H. v. Delores J.M.*, No. 18-0230, 2019 WL 4257183, at *17 (W. Va. Sept. 9, 2019) (quoting W. Va. Code § 49-2-810); *cf.* W. Va. Code § 61-6-20(3) (providing that making a fraudulent report to CPS or law enforcement may give rise to a misdemeanor offense).

"Good faith" is not defined by statute or controlling caselaw. (*Accord* ECF No. 124 at 6–8.) However, the Fourth Circuit has analyzed the term in interpreting a similar reporting statute

from Virginia.[7] *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311 (4th Cir. 2009). In *Wolf*, the Fourth Circuit relied on the plain meaning of bad faith: "[d]ishonesty of belief or purpose." *See id.* at 318 (quoting *Black's Law Dictionary* 149 (8th ed. 2004)). Then, the Court narrowed that definition by determining that "[n]egligence or mistake does not rise to the level of dishonesty." *Id.* (noting that "[t]he Virginia Supreme Court has not had occasion to interpret the term[] "bad faith" . . . in the particular context of" a CPS report and relying on "self-evident" concepts from Virginia caselaw interpreting bad faith in the insurance context). Rather, the Court indicated that a plaintiff could overcome this immunity by showing "untoward animus, pre-existing bad blood, desire for revenge, or the like." *See id.* at 319.

Here, Defendant WCBOE claims it is entitled to immunity under § 49-2-810 because the individual, a mandated reporter, "who submitted the CPS report[] noticed visible and abnormal bruising along M.T's jawline." (*See* ECF No. 124 at 8.) Defendant WCBOE also asserts that there is no causal connection[8] between the filing of the lawsuit and the CPS report because "[a]t the time of the CPS filing, no evidence suggests that any of those involved were aware of the lawsuit filed by Plaintiffs." (*Id.* at 9.) Defendant WCBOE supports its arguments with deposition excerpts, including testimony from the reporting individual who stated "that her

[7] Specifically, the Virginia statute provides that a required reporter "shall be immune from any civil or criminal liability in connection therewith, unless it is proven that such person acted in bad faith or with malicious intent." *See* Va. Code § 63.2–1512.

[8] Defendant WCBOE also asserts that "Plaintiffs cannot establish the essential causal link required for a § 1983 retaliation claim" without any further argument. (*See* ECF No. 124 at 9.) Assuming Defendant WCBOE relies on the same arguments it presents for immunity under W. Va. Code § 49-2-810, such arguments fail for the reasons discussed below. In particular, Plaintiffs have presented evidence that show a sufficient temporal proximity between the filing of this lawsuit and the "sham" CPS report. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (explaining that a retaliation claim requires the defendant to have knowledge of the protected activity and "some degree of temporal proximity to suggest a causal connection").

decision to file would have been unaffected by any prior complaints or allegations." (*See id.* at 8–9.)

However, Plaintiffs have made a sufficient showing that genuine issues of material fact exist. *See Catrett*, 477 U.S. at 322. First, Plaintiffs note that the CPS report indicated that "the child does not 'have injuries now.'" (ECF No. 118 at 4.) Explaining that "mandatory reporters have only 24 to 48 hours to report after being a witness to potential abuse," Plaintiffs argue that the specific incidents in the May 1, 2024 report primarily occurred "between April 8-10, 2024 with only vague references to events thereafter." (*Id.*) As such, the report was untimely and only occurred less than 48-hours after "the filing of this lawsuit on April 29, 2024." (*Id.*)

Second, Plaintiffs claim that the temporal proximity between the filing of this lawsuit and the "sham" CPS report is not a coincidence. (*See id.* at 4–8.) *Inter alia*, Plaintiffs assert that the reporting individual was told that the CPS report was unnecessary but filed it anyway. (*Id.* at 5–6.) Additionally, the reporting individual later claimed that she did not file it "because she believed the parents were abusing M.T." but because of a medication concern—which was not included in the report. (*Id.* at 6.) These discrepancies certainly raise questions about the motive behind the CPS report, and Plaintiffs support all their arguments with various exhibits and excerpts from deposition testimony. (*See id.* at 4–8; *cf. Liberty Lobby*, 477 U.S. at 256.)

Defendant WCBOE refutes any causal connection between the filing of the lawsuit and the CPS report, insisting that "[a] mandated reporter's statutory duties are not suspended because the child's parents and the school system are engaged in litigation, and the existence of litigation does not create a presumption of bad faith." (ECF No. 131 at 6–7 (balking at the idea that, "because litigation was pending, someone at the Board level should have intervened to prevent a school-

based mandatory reporter from contacting CPS over legitimate concerns").) The Court does not disagree. However, at the summary judgment stage, Plaintiffs have made a sufficient showing that genuine issues of material fact exist that would permit a reasonable jury to find in their favor. *See Raleigh–Durham Airport Auth.*, 597 F.3d at 576,

Accordingly, Defendant WCBOE's Motion for Summary Judgment, (ECF No. 123), is **DENIED** as to Count I.

### *C. Count II: the West Virginia Human Rights Act*

The WVHRA identifies the following unlawful discriminatory practice:

> For any persons being the . . . manager, superintendent, agent, or employee of any place of public accommodations to . . . [r]efuse, withhold from or deny to any individual because of his or her . . . disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations . . . .

W. Va. Code § 16B-17-9(6)(A).

In order to make a prima facie case of discrimination in a place of public accommodation under the WVHRA, the complainant must prove the following elements:

> (a) that the complainant is a member of a protected class;
> (b) that the complainant attempted to avail himself of the "accommodations, advantages, privileges or services" of a place of public accommodation; and
> (c) that the "accommodations, advantages, privileges or services" were withheld, denied or refused to the complainant.

Syl. Pt. 1, *K–Mart Corp. v. W. Virginia Human Rights Comm'n*, 383 S.E.2d 277, 277, 281 (W. Va. 1989). Additionally, because "[t]he WVHRA 'prohibits discrimination . . . *on the basis of* race, religion, color, national origin, ancestry, sex, age, blindness, or handicap,' . . . a cause of action under the WVHRA must be predicated upon an unlawful motivation, not simply an unlawful injury." *Arbaugh v. Bd. of Educ., Cnty. of Pendleton*, 329 F.Supp.2d 762, 772 (N.D. W. Va .2004)

(citing *Vest v. Bd. of Educ.*, 455 S.E.2d 781, 784 (W. Va. 1995) (emphasis added by the *Arbaugh* court)).

"[T]he evidentiary standards under the West Virginia Human Rights Act are identical to those for Title VII of the Federal Civil Rights Act." *Thomas v. Shoney's Inc.*, 845 F. Supp. 388, 390 (S.D. W. Va. 1994), *aff'd*, 60 F.3d 825 (4th Cir. 1995) (citing *Heston v. Marion County Parks & Recreation Commission*, 381 S.E.2d 253, 256 (W. Va. 1989)); *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 159–60 (W. Va. 1995) (instructing that cases brought under the West Virginia Human Rights Act are governed by the burden-shifting framework from *McDonnell Douglas*); *Mayflower Vehicle Sys., Inc. v. Cheeks*, 629 S.E.2d 762, 772 (W. Va. 2006) (applying the *McDonnell Douglas* burden-shifting framework to a West Virginia Human Rights Act discrimination claim); *Adkins v. CSX Transportation, Inc.*, 70 F.4th 785, 792 (4th Cir. 2023) (same); *Balderson v. Lincare Inc.*, 62 F.4th 156, 163 (4th Cir. 2023). Under Title VII, "[a] plaintiff may prove discrimination through either of two methods: (1) direct evidence of discrimination, or (2) through the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025) (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019)).[9] The *McDonnell Douglas* framework proceeds in three steps, with the burden of production shifting at each step. *Wannamaker-Amos*, 126 F.4th at 255. The burden of persuasion remains throughout with the plaintiff. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981).

---

[9] As Plaintiffs have proffered no direct evidence of discrimination, only the *McDonell Douglas* framework is relevant here.

At step one, a plaintiff must first make out a prima facie case of discrimination, discussed above. *See Wannamaker-Amos*, 126 F.4th at 255 (citing *Haynes*, 922 F.3d at 223). The burden of proof then shifts to the defendant at step two[10] to demonstrate with evidence "a legitimate, non-discriminatory justification for its allegedly discriminatory action." *Id.* (citing *Haynes*, 922 F.3d at 223). Once a defendant articulates a reason not forbidden by law, courts "do not evaluate 'whether the reason was wise, fair, or even correct.'" *Id.* at 257 (quoting *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017)). As such, a defendant does not have to persuade the court that it was "actually motivated by the proffered reason[ ]." *Burdine*, 450 U.S. at 254.

If the defendant carries this burden, the plaintiff must then "prove by a preponderance of the evidence that the neutral reasons offered by the [defendant] 'were not its true reasons, but were a pretext for discrimination.'" *Wannamaker-Amos*, 126 F.4th at 255 (quoting *Burdine*, 450 U.S. at 253). To do so, the plaintiff must "produce evidence sufficient to create a material issue of fact." *Id.* at 257 (citing *Haynes*, 922 F.3d at 223). A plaintiff can show pretext one of two ways. *Id.* The first is by offering evidence that the defendant's neutral justification at step two is "unworthy of credence." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). The second is "adducing other forms of circumstantial evidence sufficiently probative of discrimination." *Id.* (citing *Reeves*, 530 U.S. at 147). If the plaintiff makes either showing of pretext, summary judgment must not be entered. *Id.* (citing *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 652 (4th Cir. 2021)).

---

[10] "It is a common practice of the Fourth Circuit to assume, without deciding, that the plaintiff has established a prima facie case in cases where the [defendant] has proffered evidence of a legitimate reason for its adverse action in its motion for summary judgment." *Mandengue v. ADT Sec. Sys., Inc.*, No. ELH-09-3103, 2012 WL 892621, at *16 (D. Md. Mar. 14, 2012) (collecting cases). After all, "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (explaining that the *McDonnell Douglas* framework was "never intended to be rigid, mechanized, or ritualistic").

Here, Plaintiffs allege that Defendant Martin discriminated against Plaintiff M.T. and that Defendant WCBOE is vicariously liable. (*See* ECF No. 10 at 12, ¶¶ 55, 56; *see also* ECF No. 118 at 13.) Neither Defendant provides or applies the evidentiary standards in their briefs. (*See* ECF Nos. 124, 126, 131, 132.) However, in essence, both Defendants argue that Defendant Martin had "a legitimate, non-discriminatory justification for [her] allegedly discriminatory action." *See Wannamaker-Amos*, 126 F.4th at 255. Specifically, Defendant Martin argues that she "restrained M.T. with the intention of protecting her from injuring herself," as "[p]rior to the restraint, M.T. was climbing on desks and other elevated surfaces." (ECF No. 126 at 10.) Similarly, Defendant WCBOE reasons that Defendant Martin's "'motive' for engaging in the restraint was not disability-based, and instead was precipitated by M.T.'s attempt to climb on the desk." (ECF No. 131 at 9.)

Thus, the Court will begin with step two of the *McDonnell Douglas* framework. *See Aikens*, 460 U.S. at 715. Since Defendants proffered a legitimate, nondiscriminatory reason for the restraint, the burden shifts to Plaintiffs to show discriminatory pretext. *See Wannamaker-Amos*, 126 F.4th at 255. In this case, Plaintiffs have met their burden at the third step.

Unequivocally, Plaintiffs have offered evidence that the Defendants' neutral justification is "unworthy of credence." *See Wannamaker-Amos*, 126 F.4th at 257. As discussed above, Plaintiffs have offered evidence that the restraint served no purpose and was unnecessary. While Defendant WCBOE seemingly concedes that the restraint was an improper response, it nevertheless argues that Plaintiffs "do not have evidence that [Defendant] Martin undertook that response because M.T." was disabled. (ECF No. 131 at 9; *see also* ECF No. 132 at 8 ("Plaintiffs

identify no evidence that disability animus motivated the restraint rather than a response to that behavior.”).)

Direct evidence of motive is rare and not required. *See Wannamaker-Amos*, 126 F.4th at 255. To be sure, though, Plaintiffs offered other circumstantial evidence that may be probative as to Defendant Martin's alleged discriminatory motive. *Inter alia*, Plaintiffs assert that there were previous incidents wherein Defendant Martin refused to allow Plaintiff M.T. to go to recess or on field trips without any legitimate justification; the aides in the classroom disagreed with Defendant Martin's treatment/punishment of special needs students; there was an overall lack of educational instruction in the classroom; and there was a pattern of an "unusually high number of restraints" on special needs, non-verbal students when Defendant Martin was present in the classroom. (*See* ECF No. 118 at 13–21.) Plaintiffs support all their arguments with various exhibits and excerpts from deposition testimony. (*See id.*; *cf. Liberty Lobby*, 477 U.S. at 256.) While Defendants attempt to undermine some of Plaintiffs' evidence, (*see, e.g.*, ECF No. 131 at 10), Plaintiffs have nevertheless made a requisite showing of pretext, *see Wannamaker-Amos*, 126 F.4th at 257.

Accordingly, because genuine issues of material fact exist that would permit a reasonable jury to find in Plaintiffs' favor, *see Raleigh–Durham Airport Auth.*, 597 F.3d at 576, Defendants' Motions for Summary Judgment, (ECF Nos. 123, 125), are **DENIED** as to Count II.

***D. Counts III and IV: the Americans with Disabilities Act and the Rehabilitation Act***

As this Court previously explained, "the ADA and the Rehab act offer parallel protections to students with disabilities." *G.B. v. Wood Cnty. Bd. of Educ.*, No. 2:24-CV-00220, 2025 WL 898075, at *5 (S.D. W. Va. Mar. 24, 2025). Specifically, both forbid schools from discriminating

against individuals with disabilities.[11] *See id.* As such, the same analysis should be applied to both. *See Doe v. University of Md. Medical Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) ("Because the language of the two statutes is substantially the same, we apply the same analysis to both."); *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th Cir. 2002); *accord A Helping Hand, LLC v. Baltimore Cnty., MD*, 515 F.3d 356, 362 (4th Cir. 2008) ("Congress has directed courts to construe the ADA to grant at least as much protection as the Rehabilitation Act and its implementing regulations." (internal citations omitted)); *but see Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 n.17 (4th Cir. 2005) ("Although the ADA and Rehabilitation Act generally are construed to impose the same requirements, we have recognized that the causation standards under Title II of the ADA and § 504 of the Rehabilitation Act are significantly dissimilar" because "[a] plaintiff seeking relief under Title II of the ADA must prove that disability 'played a motivating role' in the adverse action, while a plaintiff seeking relief under § 504 of the Rehabilitation Act must prove that the defendants' discriminatory conduct was 'solely by reason' of the plaintiff's disability.").

A plaintiff seeking recovery for violation of either the ADA or the Rehabilitation Act must allege that: "(1) that he has a disability; (2) that he is otherwise qualified for the . . . benefit in question; and (3) that he was excluded from the . . . benefit due to discrimination solely on the basis of the disability."[12] *Doe*, 50 F.3d 1261 at 1264–65. A plaintiff may satisfy the third prong by alleging "(1) intentional discrimination or disparate treatment; (2) disparate impact; [or] (3)

[11] Title II of the American with Disabilities Act provides, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act states, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a)

[12] The first two elements are not in dispute. (*See generally* ECF Nos. 124, 118, 131.)

failure to make reasonable accommodations." *Adams v. Montgomery College (Rockville)*, 834 F. Supp. 2d 386, 393 (D. Md. 2011) (quoting *A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 362 (4th Cir. 2008)).

The *McDonnell Douglas* burden-shifting framework, discussed above, applies to discrimination claims under the ADA and the Rehab Act. *See, e.g., Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995), *as amended* (June 9, 1995), *as amended* (Mar. 14, 2008); *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 174 (4th Cir. 2024); After the plaintiff makes a prima facie case, the burden of proof then shifts to the defendant at step two to demonstrate with evidence "a legitimate, non-discriminatory justification for its allegedly discriminatory action." *Wannamaker-Amos*, 126 F.4th at 255 (citing *Haynes*, 922 F.3d at 223). Then, the burden shifts back to the plaintiff at step three to show pretext. *Id.*

Here, Defendant WCBOE argues that Plaintiffs cannot meet any of the three theories under the third prong. (ECF No. 124 at 12.) Conversely, Plaintiffs contend that Defendants' actions constitute disparate treatment. (ECF No. 118 at 20.) "Liability in a disparate-treatment case 'depends on whether the protected trait . . . actually motivated the [defendant]'s decision." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (internal citations omitted).

To that extent, Defendant WCBOE offers the same arguments as its defense to Plaintiffs' WVHRA claim: Plaintiffs have failed to show that Defendant Martin's conduct was motivated by Plaintiff M.T's disability. (*See* ECF Nos. 124; 131.) However, as discussed above, Plaintiffs have made a sufficient showing of pretext to defeat summary judgment. *See Wannamaker-Amos*, 126 F.4th at 257.

Accordingly, because genuine issues of material fact exist that would permit a reasonable jury to find in Plaintiffs' favor, *see Raleigh–Durham Airport Auth.*, 597 F.3d at 576, Defendant WCBOE's Motion for Summary Judgment, (ECF Nos. 123), is **DENIED** as to Counts III and IV.

***E. State Law Claims Against Defendant Martin***

Finally, Defendant Martin asserts that she is entitled to statutory immunity on Plaintiffs' state law claims. (ECF No. 126 at 13–14.) Specifically, Defendant Martin invokes the statutory immunity provided by West Virginia's Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29–12A–5. Under West Virginia law, employees of political subdivisions[13] are immune from liability under the Tort Claims Act except in the following three instances:

> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) Liability is expressly imposed upon the employee by a provision of [the West Virginia Code].

W. Va. Code § 29-12A-5(b). The West Virginia Supreme Court of Appeals has also made clear that, "[West Virginia's] approach to matters concerning immunity historically has followed federal law." *City of Saint Albans v. Botkins*, 719 S.E.2d 863 (W. Va. 2011).

Here, the parties agree that the relevant inquiry is whether Defendant Martin acted with a "malicious purpose, in bad faith, or in a wanton or reckless manner." (*See* ECF Nos. 126 at 14; 119 at 19.) Because Plaintiffs' state law claims are predicated on the same facts as their Section 1983 claim, (*see generally* ECF No. 1), much of the same analysis applicable to Defendant

[13] There is no dispute that Defendant Martin qualifies as an "employee" of a "political subdivision." (ECF No. 126 at 13; *see generally* ECF No. 119.)

Martin's invocation of qualified immunity against Plaintiffs' Section 1983 claim applies with equal force to her invocation of statutory immunity against the state law claims, *see Weigle v. Pifer*, 139 F. Supp. 3d 760, 775 (S.D. W. Va. 2015) (Copenhaver, J.). To that extent, a bona fide dispute exists as to whether Defendant Martin's conduct was malicious, as discussed more fully above. When the parties have, as here, a genuine disagreement about the material underlying facts necessary to engage in this statutory immunity inquiry, summary judgment is inappropriate. *See* Syl. pt. 1, *Hutchison v. City of Huntington*, 479 S.E.2d 649 (W. Va. 1996).

Accordingly, Defendant Martin's Motion for Summary Judgment, (ECF No. 125), is **DENIED** insofar as she claims statutory immunity against Plaintiff's state law claims.

## *IV. CONCLUSION*

For these reasons, the pending motions for summary judgment, (ECF Nos. 123, 125), are **GRANTED IN PART** and **DENIED IN PART**. Defendant WCBOE's motion, (ECF No. 123), is **GRANTED** as to Counts IX and X, which are hereby **DISMISSED** as to Defendant WCBOE. Defendant Martin's motion, (ECF No. 125), is **GRANTED** as to Counts III and IV, which are hereby **DISMISSED** as to Defendant Martin. The remainder of both motions are **DENIED**. Further, Counts VIII and XI are also **DISMISSED** as to Defendant Martin.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 16, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE